UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JUANITA BROWN, THERESA DORSEY,
VICTORIA DORSEY, TAWANYA
McMATH, SHEENA PUGH, JANELISSE
RAMIREZ, JESSICA RIVERA,
MARGARET EXPERIENCE,
               Plaintiffs,

-vs-                                       Case No. 6:06-cv-1329-Orl-18UAM

U.S. DEPARTMENT OF AGRICULTURE,
MIKE JOHANNS,
HAWTHORNE VILLAGE
CORPORATION OF APOPKA, INC.,
               Defendants.

## ORDER

THIS CAUSE comes before the Court upon the Motion for Summary Judgment of Defendants United States Department of Agriculture and Mike Johanns, Secretary of the United States Department of Agriculture (collectively, "USDA") (Doc. 52, filed May 4, 2007), to which Plaintiffs Juanita Brown, Theresa Dorsey, Victoria Dorsey, Tawanya McMath, Sheena Pugh, Janelisse Ramirez, Jessica Rivera, and Margaret Experience ("Plaintiffs") responded in opposition.[1] (Doc. 55, filed June 4, 2007.) After reviewing the motions and memoranda, the Court grants summary judgment to USDA.

---

[1] Defendant Hawthorne Village Corporation of Apopka, Inc. ("HVCA") also filed a response stating that it withholds a substantive response because USDA's motion is not directed at any defense raised by HVCA. (Doc. 54, filed June 4, 2007.)

## I. BACKGROUND

Hawthorne Village Apartments is an eighty-three unit apartment complex in Apopka, Florida that was developed in 1982 with a loan from the USDA Rural Development Farm Worker Housing Program. It was developed to provide affordable rental housing to farm laborers and their families and was operated by the Orlando Housing Authority, subject to regulation by USDA. Since its development, the physical conditions at the apartment complex declined considerably. Problems have included water intrusion, mold, and mildew. In 2001, the Orlando Housing Authority, USDA and Homes in Partnership ("HIP"), a not-for-profit housing developer, began negotiations to transfer ownership of Hawthorne Village Apartments to HIP. In February 2004, following USDA's approval, ownership of Hawthorne Village Apartments was transferred to HVCA, a subsidiary of HIP. At that time, HVCA executed a mortgage with USDA for the remaining amount left on the initial financing for Hawthorne Village Apartments. USDA initially pledged $900,000 toward renovations and repairs, but later obligated an additional $1,000,000 in loan funds to renovate and fix the property. In March 2004, Orange County, Florida entered into an agreement with HIP and HVCA which allocated $1,000,000 toward certain repairs and renovations. HVCA solicited bids for the repair work in 2005 and 2006, but the bids were either excessive or the bidder could not secure the required bonding. Plaintiffs allege that of the funds set aside for the renovations at Hawthorne Village Apartments, USDA only utilized approximately $250,000 for emergency roof repairs.

In March 2006, Orange County determined that since the complex had been severely damaged by moisture, mold, and termites, it would be cost prohibitive to renovate the existing

buildings. HVCA requested to cease operation of the complex. At some point between March and June 2006, USDA approved HVCA's request to close Hawthorne Village Apartments.

On June 1, 2006, HVCA notified tenants that Hawthorne Village Apartments would be closed and that all tenants would have to vacate the apartments no later than July 31, 2006 (a sixty-day period). This departure date was later extended to August 31, 2006, which gave tenants a total of ninety days' notice to vacate. Plaintiffs admit that on June 2, 2006, USDA issued a Letter of Priority Entitlement ("LOPE") to each tenant, allowing them priority selection at any USDA or Department of Housing and Urban Development properties. In addition, Plaintiffs acknowledge that USDA and HVCA organized a housing fair for the tenants of Hawthorne Village Apartments to assist them in finding new housing. USDA also informed tenants that it would pay moving expenses for tenants who relocated to USDA properties.

Eleven low income tenants of Hawthorne Village Apartments initially filed a Complaint against USDA and HVCA. (Doc. 1, filed September 5, 2006.) Three of those tenants were voluntarily dismissed from this action. (See Doc. 37, filed December 11, 2006.) On March 28, 2007, Plaintiffs filed an Amended Complaint asserting that USDA failed to provide benefits as provided by the Uniform Relocation Act, 42 U.S.C. §§ 4601- 4655. and asserting various state law claims against HVCA. (Doc. 46.)

## II. DISCUSSION

### A. Summary Judgment Standard

A court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see, e.g., Stachel v. City of Cape Canaveral, 51 F. Supp. 2d 1326, 1329 (M.D. Fla. 1999). Material facts are those that may affect the outcome of the case under the applicable substantive law. Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of proving that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The moving party may rely solely on the pleadings to satisfy its burden. Celotex, 477 U.S. at 323-24. A non-moving party bearing the burden of proof, however, must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories, or admissions that designate specific facts indicating there is a genuine issue for trial. Id. at 324. If the evidence offered by the non-moving party is merely colorable, or is not significantly probative, the Court may grant summary judgment. Anderson, 477 U.S. at 249-50. Similarly, summary judgment is mandated against a party who fails to prove an essential element of its case. Celotex, 477 U.S. at 322.

### B. *The Uniform Relocation Act*

The Uniform Relocation Act ("the URA") "provides that any person 'displaced' from his home or place of business by a federal or federally-funded project is entitled to relocation benefits." Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co., 464 U.S. 30, 32 (1983).

Plaintiffs acknowledge that "[t]o be eligible to receive benefits under the URA, a person must fall within the definition of 'displaced person.'" (Doc. 55 at 9.) The relevant definition provides that a "displaced person" is one who is forced to move from real property "as a direct result of rehabilitation, demolition, or such other displacing activity as the lead agency may prescribe, under a program or project undertaken by a Federal agency or with Federal financial assistance in any case in which the head of the displacing agency determines that such displacement is permanent . . . ." 42 U.S.C.A. § 4601(6)(A)(i)(II). The URA implementing regulations also provide a similar definition, stating that "[t]he term displaced person means . . . any person who moves from the real property or moves his or her personal property from the real property . . . [a]s a direct result of rehabilitation or demolition for a project . . . ." 49 C.F.R. § 24.2(a)(9)(i)(B). The phrase "program or project" is defined as "any activity or series of activities undertaken by a Federal Agency or with Federal financial assistance received or anticipated in any phase of an undertaking in accordance with the Federal funding Agency guidelines." 49 C.F.R. § 24.2(a)(22). The URA defines "Federal financial assistance" as "a grant, loan, or contribution provided by the United States, except any Federal guarantee or insurance . . . ." 42 U.S.C. § 4601(4).

USDA contends that Plaintiffs are not eligible for benefits under the URA because USDA neither undertook the program or project nor provided the financing to HVCA for the demolition of Hawthorne Village Apartments. (Doc. 52 at 5.) Plaintiffs contend that there is no question that the demolition of Hawthorne Village Apartments was connected to the activities of USDA, specifically alleging that USDA authorized the demolition. (Doc. 55 at 10.) Additionally, Plaintiffs allege that "USDA's extensive involvement in the transfer, the decision not to fund the rehabilitation, and the closure of the complex provide ample evidence of federal activities leading to the Plaintiffs' displacement." (Id. at 9.) However, the URA "establishes a uniform policy for the fair and equitable treatment of persons displaced as a *direct* result of programs or projects undertaken by a Federal agency or with Federal financial assistance." 42 U.S.C. § 4621(b) (emphasis added). Indeed, the plain language of § 4601(6)(A)(i)(I) requires a causal connection between the displacement and the government program or project. See Highway Pavers, Inc. v. Sec'y, Dep't of the Interior, 650 F. Supp. 559, 562 (S.D. Fla. 1986) (stating that the "causal connection requires that the relocation . . . occur as a direct result of the government [project]").

Here, Plaintiffs do not allege that USDA issued any written order or request to vacate the property. (Doc. 55 at 6.) USDA merely concurred with HVCA that the condition of Hawthorne Village Apartments was such that tenants should seek alternative housing. (Id.; Doc. 52-2 at 3.) There is no direct connection between any federal funds or activities by USDA and the actual demolition of Hawthorne Village Apartments. Thus, under the Court's reading of the URA, Plaintiffs have not demonstrated that they are "displaced persons."

Plaintiffs further argue that USDA's own regulation supports the position that Plaintiffs are eligible for relocation benefits. (Doc. 55 at 12.) The regulation at issue provides that "[i]f occupancy is terminated due to conditions which are beyond the control of the tenant, such as a condition related to required repair or rehabilitation of the building, or a natural disaster, the tenants who are affected by such a circumstance are entitled to benefits under the [URA] and may request a [LOPE] . . . ." 7 C.F.R. § 3560.159(c). Plaintiffs contend that this regulation makes it clear that the URA applies to Plaintiffs.[2] (Doc. 55 at 12.) However, Plaintiffs' interpretation of the regulation is inconsistent with the provisions of the URA. The plain language of the regulation does not eliminate the requirement, set forth in the URA, that relocation benefits are only available to "displaced persons." Thus, the USDA regulation does not expand coverage under the URA to Plaintiffs, because they are not "displaced persons."

Accordingly, summary judgment is appropriate.

### C. Substantial Compliance

The Court notes that even though Plaintiffs are not "displaced persons" under the URA, USDA has voluntarily provided Plaintiffs with benefits that are available under the URA. Plaintiffs were given a total of ninety days to vacate Hawthorne Village Apartments. (Doc. 55 at 6.) Plaintiffs were each provided with a LOPE for priority selection at any USDA or Housing

---

[2] Plaintiffs allege that USDA has admitted that benefits under the URA "are tied to the termination of the tenancy based on uninhabitable conditions at the complex." (Doc. 55 at 12) (citing Reinvention of the Sections 514, 515, 516, and 521 Multi-Family Housing Programs, 69 Fed. Reg. 69032, 69062 (Nov. 26, 2004)). However, such statements do not eliminate the requirement that to be eligible for relocation benefits Plaintiffs must demonstrate that they satisfy the relevant definition of "displaced person."

and Urban Development subsidized apartment complex. (Id.) Plaintiffs contend that this assistance was not satisfactory because there were limited vacancies in USDA properties near Hawthorne Village Apartments and that it would have been inconvenient to relocate to other more distant USDA properties. (Id. at 16-18.) However, the URA does not require that displaced persons be assisted in finding replacement housing in the same neighborhood and does not require that the replacement housing offer them the same level of convenience. See Dean v. Martinez, 336 F. Supp. 2d 477, 491 (D. Md. 2004).

In addition, USDA provided assistance by organizing a housing fair and providing individual counseling. (Doc. 55 at 6-7.) USDA also offered up to $2,000.00 in moving expenses to each tenant who moved to a USDA property. (Id. at 7 n.4.) Thus, even if the URA were to apply to Plaintiffs, summary judgment is appropriate because USDA has voluntarily provided benefits that are available under the URA.

### III. CONCLUSION

For the foregoing reasons, USDA's Motion for Summary Judgment is **GRANTED**. The Clerk of the Court is directed to **ENTER JUDGMENT** in favor of USDA.

**DONE** and **ORDERED** in Orlando, Florida on this 2nd day of October, 2007.

_____
G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties